UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BARBARA ANNE LINDSLEY,

                              Plaintiff,

                                                        **Hon. Hugh B. Scott**

              v.                                        **13CV771A**

                                                        **Report
                                                        and
CAROLYN W. COLVIN, Acting                               Recommendation**
Commissioner of Social Security[1],

                              Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket

Nos. 19 (plaintiff), 20 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff ("Barbara Anne Lindsley" or "plaintiff") filed an application for disability

insurance benefits on January 15, 2010.   That application was denied initially and on

reconsideration.   The plaintiff appeared before an Administrative Law Judge ("ALJ"), who

considered the case de novo and concluded, in a written decision dated March 28, 2012, that the

---

[1]On February 14, 2013, Carolyn W. Colvin became acting Commissioner of Social
Security.   Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for the
now former Commissioner Michael Astrue as Defendant in this action; no further action is
required, 42 U.S.C. § 405(g).

plaintiff was not disabled within the meaning of the Social Security Act.   The ALJ's decision

became the final decision of the Commissioner on May 28, 2013, when the Appeals Council

denied plaintiff's request for review.

Plaintiff commenced this action on July 25, 2013 (Docket No. 1).   The parties moved for

judgment on the pleadings (Docket Nos. 19, 20).   The motions were argued and deemed

submitted on July 8, 2014.

## FACTUAL BACKGROUND[2]

Plaintiff was born February 23, 1976, and has a high school education (R. 30).   She

performed unskilled labor before her claimed disability, last working at a motel until her medical

condition worsened and accommodations for it were removed (R. 22).   She claims major

depression, recurrent cannabis and opioid dependence, post-traumatic stress disorder, as well as

wrist problem; rotator cuff impingement and tendonitis, diabetes, and asthma deemed non-severe

by the ALJ.

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff claims a number of subjective complaints and functional limitations attributable to

her asserted impairments, namely mental health conditions and carpel tunnel (R. 24, 41, 136).   At

her hearing, plaintiff testified that she worked part time as a laundry worker and housekeeper from

2003-10, working up to 30 hours a week (R. 25, 42, 43).   She stated that she missed a lot of time at

work and could not stay in control of her actions (R. 25, 43).   In 2010, plaintiff had a mental

breakdown and a doctor ordered her not to work (R. 25).   Her impairment was an overdose of

alcohol and pills (R. 25).   She lives with two of her four children and has a case manager for her

and her children, with a parent aid coming in daily for an hour (R. 25).   She sees a therapist every

_____

[2]References noted as "(R.___)" are to the certified record of the administrative proceedings.

other week or weekly and takes her medication (R. 25), although there are reports in her medical record of periods when she stopped taking her medication (R. 26, 447).   She writes everything down, she gets DVT therapy and goes into her room and fantasizes about being in another world (R. 25).

The ALJ found that plaintiff had severe impairments for major depression and cannabis and opioid dependence, and post-traumatic stress disorder ("PTSD"), but found her other claimed impairments to be non-severe (R. 23).   As for her claimed mental impairments, the ALJ found that she did not have at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation to meet the regulatory "paragraph B" requirements for a qualifying impairment (R. 23).   The ALJ also concluded that, regarding "paragraph C" requirements, the evidence failed to show paragraph C criteria (R. 24).

Regarding her asthma, the ALJ found that it was non-severe and that plaintiff had no pulmonary function tests, emergency room or other hospital admissions for any attacks and no notation of asthma in treating notes (R. 23).   The ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or exceeded the severity of one of the impairments listed in the Social Security regulations (R. 23-24).

The ALJ next found that plaintiff had a residual functional capacity to perform all exertional levels of work, with nonexertional limitations to avoid interactions with the public as her duties and she could occasionally understand, remember and carry out complex and detailed task (R. 24).   The ALJ concluded that plaintiff could resume her past relevant work in housekeeping and laundry laborer (R. 30).

Analyzing plaintiff's medal impairments under listings 12.04, 12.06, and 12.09, the ALJ found that "paragraph B" criteria were not met, since she did not have two "marked" limitations or one "marked limitation and "repeated" episodes of decompensation (as defined in paragraph B) (R. 23, 24).   The ALJ found that "paragraph C" criteria were not met (R. 24).

The ALJ asked the vocational expert whether plaintiff can return to her past relevant work as a hotel housekeeper or laundry worker, posing a series of hypotheticals (R. 55).   In the first hypothetical, the subject would have non-exertional limitations to avoid interactions with the public, and occasionally understanding and carrying out complex and detailed tasks, and that subject could perform plaintiff's past relevant work (R. 55).   The expert also opined that a similar subject could work (for example) as a hand packager or industrial cleaner (R. 55-56).   Plaintiff's counsel asked the expert refinements to the hypothetical (R. 56-58).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.   See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined as "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated   Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."   42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents her from returning to her previous type of employment.   Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).   Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative   substantial gainful work which exists in the national economy and which the plaintiff could perform."   Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; <u>Berry</u>, <u>supra</u>, 675 F.2d at 467.   If a plaintiff is found to be

either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends.

20 C.F.R. §§ 404.1520(a) & 416.920(a); <u>Musgrave v. Sullivan</u>, 966 F.2d 1371, 1374 (10th Cir.

1992).   However, it should be noted that the ALJ has an affirmative duty to fully develop the

record.   <u>Gold v. Secretary</u>, 463 F.2d 38, 43 (2d Cir. 1972).

 In order to determine whether an admitted impairment prevents a claimant from

performing past work, the ALJ is required to review the plaintiff's residual functional capacity and

the physical and mental demands of the work has done in the past.   20 C.F.R. §§ 404.1520(e) &

416.920(e).   When the plaintiff's impairment is a mental one, special "care must be taken to

obtain a precise description of the particular job duties which are likely to produce tension and

anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other

people, etc., in order to determine if the claimant's mental impairment is compatible with the

performance of such work."   <u>See</u> Social Security Ruling 82-62 (1982); <u>Washington v. Shalala</u>,

37 F.3d 1437, 1442 (10th Cir. 1994).   The ALJ must then determine the individual's ability to

return to past relevant work given claimant's residual functional capacity.   <u>Washington</u>, <u>supra</u>,

37 F.3d at 1442.

*Application*

 In the instant case, plaintiff argues that the ALJ failed sufficiently to develop the record by

ordering intelligence testing of plaintiff when medical sources clearly conflicted on the extent of

her cognitive limitations (Docket No. 19, Pl. Memo. at 17-19).   She faults the ALJ for rejecting

the opinion of psychiatric consultative examiner Dr. Adele Jones, and the residual functional

capacity assessment is thus not based on substantial evidence (<u>id.</u> at 20-24).   The residual

functional capacity did not account for plaintiff's severe and non-severe impairments, in particular

major depression, post-traumatic stress disorder, and asthma (id. at 24-27).   Finally, plaintiff

argues that the ALJ improperly inserted his own opinion over that of medical sources, resulting in

a residual functional capacity not based on substantial evidence (id. at 27-30).

I.      Intelligence Testing

Plaintiff points out that the medical record has six opinions as to her cognitive level, hence

plaintiff concludes that the ALJ needs intelligence testing.   The record indicates different

classifications for plaintiff as mentally retarded, borderline intellectual functioning, and low

average (R. 463, 449, 447, 468; Docket No. 19, Pl. Memo. at 17).   These opinions conflicted and

plaintiff concludes the record was insufficient to determine her cognitive functioning, warranting a

remand (Docket No. 19, Pl. Memo. at 18).

In September 2006, plaintiff was admitted to Wyoming County Hospital for anxiety and

depression and had a Global Assessment of Functioning ("GAF") score at her admission of 45 and

at discharge of 55 (R. 25).   She was discharged with a diagnosis of major depression (R. 25).

From her 2006 treatment, she had a GAF score of 65, and, at a 2007 discharge, a score of 65

(R. 27).   In October 2007, she had a GAF of 60 (R. 27).

In December 2009, plaintiff was discharged from Horizon Village with diagnoses of

cannabis and opioid dependence and GAF score of 57 (R. 26, 282; see 249-50, 261), after having a

GAF score of 51 in September 2009 (R. 278, 282).

The Genesee County Community Mental Health Services treated plaintiff in 2010, and

administered intelligence testing in January and March 2010, finding that she had a full I.Q. score

of 61 (R. 448-49).   The ALJ, however, discounted this score since the test was not validated and

that, in May 2010, the same facility (R. 444) found that plaintiff had a GAF score of 70 (R. 27).   In

March 11, 2010, psychiatrist Dr. Anthony Racaniello found that plaintiff had a low average of intelligence "based on complexity of concepts, vocabulary, and history versus the possibility of borderline intellectual functioning" (R. 447).   The ALJ did not address this finding. Consultative examiner Dr. Adele Jones found, in June 2010, that plaintiff has borderline intellectual functioning; while ruling out mild mental retardation, Dr. Jones noted that plaintiff had a full scale I.Q. of 61 in January 14, 2010 (R. 468), the same test results the ALJ rejects (R. 27). Dr. Jones comments that plaintiff's performance on the January 2010 I.Q. test may have been "significantly and negatively affected by her mental status, possibly including disassociating" (R. 468).   The ALJ, however, rejected Dr. Jones' findings because they are opposite to those found by the Genesee County Community Mental Health Services' treatment record, where there was no dissociative evidence in the record (R. 28).

Thus, as discussed, plaintiff's GAF and IQ scores varied over time without a clear explanation.   The only possible explanation, by Dr. Jones of plaintiff's disassociating while taking intelligence tests, was rejected by the ALJ with little to support this rejection.   As plaintiff urges, further intelligence testing is necessary to complete the record to determine her mental capacity.   On this ground, plaintiff's motion for judgment on the pleadings **should be granted** and the matter **remanded** for further proceedings.

II.     Rejecting Opinion of Psychiatric Consultant

The ALJ (R. 28) rejected the opinion of the consultative examiner, Dr. Adele Jones (R. 464-69).   Dr. Jones opined that plaintiff could not perform simple and complex tasks independently (R. 467), concluding that the results of her examination are consistent with other psychiatric and cognitive problems and may significantly interfere with her ability to function on a

daily basis (R. 468).   The ALJ, however, found this evaluation to be opposite her treatment record

at Genesee County Mental Health and discounted the opinion completely (R. 28).   Defendant now

argues that the ALJ did consider Dr. Jones' opinion and gave it appropriate weight because it was

not supported by her unremarkable clinical findings (Docket No. 20, Def. Memo. at 15; R. 466-67)

and was inconsistent with the treatment notes from Genesee County Mental Health (Docket

No. 20, Def. Memo. at 15; R. 331-80, 444-49, 474-91, 467).

     Plaintiff points to other instances in her medical record that is consistent with Dr. Jones'

opinion, including from the Genesee County facility (Docket No. 19, Pl. Memo. at 21-22, 22),

such as instances when plaintiff had to rely upon case managers for support to conduct daily

activities as well as intervention for serious health, safety, and legal concerns (id. at 22: R. 552

535, 613, 637, 566, 554, 555, 518, 516).   A review of Dr. Jones' discussion of plaintiff's mode of

living and mental status shows that plaintiff was able to dress, bathe, and groom herself, cook,

clean and launder, manage money and drive, but she said that she needs her mother to go shopping

with her to avoid buying the wrong thing (R. 467).   Plaintiff's mental status only notes that her

thought processes were slowed at times with possible thought blocking and mildly impaired recent

memory skills (R. 466, 467).

     The ALJ has the discretion to determine which opinion to accept and the weight to be given

to that opinion, see Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (Docket No. 20, Def. Memo.

at 15).   The inconsistency between Dr. Jones' examination and her conclusions justify the ALJ's

assessment of the weight of her opinion.

III.     Severe and Non-Severe Impairments

Plaintiff next argues that the residual functional capacity did not account for plaintiff's

non-exertional limitations by her severe impairments of depression and PTSD (Docket No. 19, Pl.

Memo. at 25-26).   She emphasized her mental illness as described in her medical record, the

examination of Dr. Jones, and the ALJ's own (R. 24-30) findings (Docket No. 19, Pl. Memo. at

25).

This analysis also did not factor in plaintiff's asthma in her RFC as a non-exertional

limitation, with plaintiff indicating her treatment for this ailment (Docket No. 19, Pl. Memo. at 26;

R. 309, 308, 450, 453).   The ALJ discounted one doctor's notation of plaintiff's history of asthma,

by examiner Dr. Harbinder Toor (R. 453), but did not consider treatment by a second doctor,

Dr. Nashiha Shahid (R. 309, 308), which substantiated Dr. Toor's finding (Docket No. 19, Pl.

Memo. at 26).   Thus, plaintiff contends that an incomplete hypothetical (not including these facts)

was presented to the vocational expert (Docket No. 19, Pl. Memo. at 27).   Defendant responds

that plaintiff did not allege any significant limitations due to asthma, and the record did not

indicate any limitations (Docket No. 20, Def. Memo. at 15-16).

Since there was a treating record for plaintiff's asthma, on remand the ALJ should

reconsider Dr. Toor's examination.

IV.     ALJ's Opinion

Plaintiff faults the ALJ for reinterpreting medical opinions and inserting these

interpretations in rejecting Dr. Jones' opinion (Docket No. 19, Pl. Memo. at 27; cf. R. 27-28).   But

the ALJ could rely upon the internal inconsistencies within Dr. Jones' evaluation.

**CONCLUSION**

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 20) should be **denied** and plaintiff's motion for similar relief in her favor (Docket No. 19) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a). <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

11

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3),

"written objections shall specifically identify the portions of the proposed findings and

recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority."   **Failure to comply with the provisions of Rule 72.3(a)(3) may**

**result in the District Court's refusal to consider the objection.**

So Ordered.



_s/Hugh B. Scott_
_____
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
August 11, 2014